## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

_____
)
CHRISTINA I. SANTOS AND JOHN M. SANTOS;)
JUDITH ANN KRAUS; & DENISE L. BELANGER)
ON BEHALF OF THEMSELVES AND ALL           )
OTHERS SO SIMILARLY SITUATED              )
                                          )
            *Plaintiffs,*                 )        C.A. NO.  22-103 (LEAD CA 22-2)
                                          )
      vs.                                 )        AMENDED CLASS ACTION
                                          )        COMPLAINT
                                          )
                                          )        JURY TRIAL DEMANDED
NATIONSTAR MORTGAGE, LLC                  )
(NKA MR. COOPER)                          )
                                          )
            *Defendant.*                  )
_____)

## **INTRODUCTION**

1.      The Representative Plaintiffs, Christina I. Santos and John M. Santos, Judith Ann Kraus

and Denise L. Belanger, on behalf of themselves and all others so similarly situated, bring this

action as described in the paragraphs set forth herein. The Representative Plaintiffs seek damages

and a declaratory judgment that the foreclosure and mortgagee's foreclosure sale of the

Representative Plaintiffs' properties by the Defendant are void due to the Defendant's breach of

contracts and breach of condition precedents to the Statutory Power of Sale for failing to foreclose

in a manner prescribed by "applicable law" by foreclosing and conducting mortgagee's sale in

violation of R.I.G.L. § 19-14.11-1.  Said statute and mortgage contracts required that the Defendant

first obtain a third-party servicing license with the State of Rhode Island Department of Business

Regulation prior to foreclosing on the Representative Plaintiffs' properties.   Representative

Plaintiffs further seek damages for the untimely loss of their property that was caused by the

Defendant's failure to comply with applicable law.  See Andrade v. Ocwen Loan Servicing, LLC,

C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021)

2.      One of the primary activities that the holders of mortgages and notes hire third-party loan servicers for in the mortgage industry is to initiate and effectuate foreclosures on mortgage loans. In conducting such activities in this case, Defendant Nationstar, an unlicensed third party loan servicer and assignee of the mortgage contracts, sent mortgage statements, sent notices of default and acceleration, hired attorneys and other venders such as, property managers and auctioneers, executed foreclosure deeds and affidavits of sale, as authorized and directed by third party principals including but not limited to, Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder, in order to initiate and effectuate foreclosures on the Plaintiffs' properties..

3.      The Defendant Nationstar's affirmative actions in initiating and effectuating foreclosures on the Class Plaintiffs' properties constituted breaches of the applicable law provisions of the Class Plaintiffs' mortgage contracts. See. Andrade v. Ocwen Loan Servicing, LLC, Nos. 18-385 WES (Sept. 24, 2019) ("[i]t does not take a leap of logic to conclude that a mortgagor who engages an unlicensed loan servicer to effectuate a foreclosure is not acting in a manner prescribed by applicable law."). Said breaches were the direct cause of damages due to the untimely and void foreclosure of their properties that were effectuated while Nationstar did not have a servicing license in accordance with applicable laws as well as rendered the foreclosures null and void. Representative Plaintiffs further seek damages for the untimely loss of their property that was caused by the Defendants' failure to comply with applicable law. See. Andrade v. Ocwen Loan

<u>Servicing, LLC</u>, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021)[1]

4.    The Representative Plaintiffs also seek damages and a declaratory judgment that the foreclosures and mortgagee's foreclosure sales of the Plaintiffs' properties by the Defendant are void due to the Defendant's breach of contracts and breach of condition precedents to the Statutory Power of Sale because the Defendant accelerated all sums due under the subject mortgages and foreclosed said properties when the Defendant was not authorized to take such actions pursuant to Paragraph 9(d) of the subject mortgages and regulations of the Secretary of the Department of Housing and Urban Development, codified under 24 CFR 203.604(b).

5.    The Representative Plaintiffs herein pray this Honorable Court find that the Defendant is in Breach of Contract and declare that the Defendant is in breach of necessary condition precedents to the foreclosures as set forth in the Mortgages, declare that the foreclosures and mortgagee sales of the Plaintiffs' properties be declared void, enjoin the Defendant from further wrongful conveyance of Plaintiffs' properties, that the Defendant be Ordered to return the Plaintiffs to their status prior to the wrongful foreclosures and sales, including but not limited to, the rescission of the wrongful foreclosures and sales, and award the Plaintiffs damages for the untimely loss of property due to Defendant's misconduct.  See. <u>Andrade v. Ocwen Loan Servicing, LLC</u>, C.A. Nos.

---

[1] "Defendants' argument assumes, to its detriment, that the foreclosures were inevitable. Defendants ask the Court to presume that, had Ocwen not foreclosed on Plaintiffs' mortgages without a license, Ocwen would have foreclosed with a license, requiring the further conjecture that Ocwen could have received a license during this two-plus-year period of non-licensure. Alternatively, Defendants' argument may be premised on the assumption that, had Ocwen not effectuated the foreclosures, entities that were in compliance with the Rhode Island licensing requirements would have done so instead. Moreover, Defendants presume that these counterfactual foreclosures would have occurred on the same timelines as the foreclosures that actually occurred. (The loss of even a brief period in one's home can constitute an injury."

18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021)

6.    Additionally, Representative Plaintiffs, on behalf of themselves and all other so similarly situated, hereby bring a separate class action count for breaches of contract based on the Defendants' collecting of illegal and unlicensed third-party loan servicing fees and advances "expressly prohibited" by "the Security Instruments or by Applicable Law".

7.    According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

8.    24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below". Plaintiffs aver that the collection of unlicensed servicing fees and advances are neither reasonable or customary

9.    No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

10.    Representative Plaintiffs also aver that such illegal and unlicensed third-party-loan-servicing fees collected or yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

11.    Representative Plaintiffs set forth that they be credited for all illegal unlicensed servicing fees "involving" their mortgage loan accounts for the Defendants' breach of their mortgage loan accounts.  The Class Plaintiffs in the servicing fee class consist of all residential mortgage loan accounts in which the Defendants collected illegal and unlicensed servicing fees in violation of R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) regardless of whether or not the properties were foreclosed on and whose mortgages contain the above provision or similar language that the Defendants' and mortgages are subject to "applicable law".

12.    The Representative Plaintiffs herein pray this Honorable Court find that the Defendants are in Breach of Contract, declare that foreclosures and mortgagee sales of the Representative Plaintiffs and class members mortgages and properties be declared void, enjoin the Defendants from further wrongful conveyance of Plaintiffs and class members properties, that the Defendants be Ordered to return the Representative Plaintiffs and class members to their status prior to the wrongful foreclosures and sales, including but not limited to, the rescission of all wrongful foreclosures and sales, and award the Plaintiffs and class members damages for the Defendants misconduct.

## JURISDICTION AND VENUE

13.    The events giving rise to the claims stated herein occurred in the District of Rhode Island and this venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391.

14.    Venue is proper in this Honorable Court in that this Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

15.    Pursuant to Fed. R. Civ. P. Rule 23(a)(1), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable.

16.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1), there are questions of law and fact common to the class.

17.     Pursuant to Fed. R. Civ. P. Rule 23(a)(3), the claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the class.

18.     Pursuant to Fed. R. Civ. P. Rule 23(a)(4), the Representative Plaintiffs will fairly and adequately protect the interests of the class.

19.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A)&(B), prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications and may substantially impair or impede their ability to protect their interests.

20.     Pursuant to Fed. R. Civ. P. Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

21.     Pursuant to Fed. R. Civ. P. Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

22.     Representative Plaintiffs and members of the class claim ownership of their rightful properties and seek to clear their titles of all illegal encumbrances pursuant to the void foreclosures.

23.    Representative Plaintiffs and members of the class claim a right to seek actual, exemplary, punitive, and monetary damages for the Defendant's violation of R.I.G.L. § 19-14.11-1 and breaches of the mortgage contracts.

## PARTIES

24.    Representative Plaintiffs, Christina I. Santos and John M. Santos, claim to be the rightful owners of 64 Forest Avenue, Cumberland, RI 02864 which is the "subject property" referenced herein.  They are located at 14W Barrows Street, Cumberland, RI 02864.

25.    Representative Plaintiff, Judith Ann Kraus, claims to be the rightful owner of 522 West Shore Road, Warwick, RI 02889 which is the "subject property" referenced herein.  She is located at is 407R Pequot Avenue, Warwick, RI 02889.

26.    Representative Plaintiff, Denise L. Belanger, claims to be the rightful owner of 78 Wood Street, Warwick, RI 02889 which is the "subject property" referenced herein.  She is located at is located at 297 Washington Street #2, West Warwick, RI 02893.

27.    Defendant, Nationstar Mortgage LLC d/b/a Mr. Cooper, is a mortgage servicer located at 8950 Cypress Waters Blvd., Coppell, TX 75261.

## ALLEGATIONS OF THE SANTOS REPRESENTATIVE PLAINTIFFS

28.    The Santos Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

29.    Representative Plaintiffs, Christina I. Santos and John M. Santos, claim to be the rightful owners of 64 Forest Avenue, Cumberland, RI 02864 which is the "subject property" referenced herein.

30.    On August 6, 2004, the Santos Plaintiffs were conveyed the subject property. The Deed granting the property to the Santos Plaintiffs was recorded in the Town of Cumberland Land Evidence Records in Book 1220, at page 320 on August 11, 2004.

31.    On September 21, 2010, the Santos Plaintiffs executed a promissory note and mortgage deed in favor of Freedom Mortgage Corporation as lender and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee. ("Santos Mortgage/Note"). The Santos Mortgage was recorded in the Town of Cumberland Clerk's Office Land Evidence Records in Book 1510, at page 28 on October 4, 2010.

32.    The Santos Mortgage was designated as an "FHA" mortgage and was noted as such on the mortgage itself on page one (1) with the "FHA case number" 451-1149608-703.

33.    Mortgages insured by the Federal Housing Authority (FHA) and their corresponding underlying obligations (notes) are originated and or serviced by entities, such as Defendant, Nationstar, and are pooled and transferred into mortgage-backed trusts. Trusts backed by FHA insured mortgage loans are administrated by Government National Mortgage Association (Ginnie Mae) or other government entities and unidentified assigns which are the actual holders and owners of the loans.  Therefore, Nationstar was acting as a third-party loan servicer for the Santos loan at all times during the allegations set forth in this Complaint.

34.    The Santos' FHA standard mortgage contract at Paragraph 9(d) states that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

35.    At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. 24 CFR 203.604(c) further states that a face-to-face meeting is not required if: **(1)** the mortgagor does not reside in the mortgaged property, **(2)** the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, **(3)** the mortgagor has clearly indicated that he will not cooperate in the interview, **(4)** a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or **(5)** a reasonable effort to arrange a meeting is unsuccessful.

36.    24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property

37.    The Santos Mortgage also states at Paragraph 18 as follows;

> "18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies **permitted by applicable law.**  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13.  Lender shall publish a notice of sale, and **the Property shall be sold in the manner prescribed by applicable law.** . . " (emphasis added)

38. On July 24, 2015, MERS purportedly assigned the subject mortgage to Nationstar. Said purported "Assignment of Mortgage" was recorded in the Town of Cumberland Land Evidence Records in Book 1686 Page 4 on August 3, 2015.

39. On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states:

> § 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

40. R.I.G.L. § 19-14-1 (39) defines a "Third Party Loan Servicer" in relevant part as an "entity that owns the servicing rights to a loan secured by residential real estate located in Rhode Island whether or not that owner services the loan themselves or contracts with another person or entity for the servicing".

41. R.I.G.L. § 19-14-1 (33) defines "Servicing" in relevant part as "receiving a scheduled, periodic payment from a borrower pursuant to the terms of a loan, including amounts for escrow accounts and making the payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower *as may be required pursuant to the terms of the servicing loan documents or servicing contract"*.

42. The Defendant, Nationstar is a party to a pooling and servicing Agreement with Ginnie Mae, FHA, the Secretary of HUD or a thir- party noteholder, which granted or assigned Nationstar ownership of the servicing rights of the Santos's residential mortgage.

43. Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Santos loan, was responsible for receiving scheduled periodic payments of principal, interest and escrow on the Santos loan, as well as "making payments to the owner of the

loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower".

44.    Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Santos loan, was responsible for initiating and effectuating foreclosure proceedings consistent with applicable law, upon Santos's default, with Ginnie Mae, FHA, the Secretary of HUD or a third-party noteholder's consent.  Furthermore, Nationstar, as third-party loans servicer, was required to make payments for out-of-pocket costs, including but not limited to, foreclosure and eviction fees and foreclosure and eviction expenses pursuant to the Servicing Agreement.

45.    Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer, collected illegal and unlicensed servicing fees during the period of non-licensure based on a percentage of the principal balance of the loans in the pool of loans owned by the Trust.

46.    The illegal and unlicensed servicing fees consisting of a yearly percentage of the principal balance of the loans in the trust including the Santos loan, were collected by the Defendant from the monthly payments of the loan and/ or were collected from the liquidation proceeds of the mortgage when the property was foreclosed on.

47.    Additionally, Nationstar, as third-party loan servicer, charged illegal and unlicensed servicing fees to the Plaintiffs' accounts including but not limited to, inspection fees, convenience fees, attorneys fees, REO BPO fees, appraisal fees, maintenance fees, eviction and wire fees.

48.    Plaintiff avers that Nationstar collected these servicing fees in breach of the mortgage which states at Paragraph 14, or a similar mortgage provision, that such charges are "governed . . . by the law in the jurisdiction where the property is located".

49.     According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

50.     24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below".

51.     Plaintiff avers that the collection of unlicensed servicing fees and advances are neither reasonable or customary

52.     No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

53.     Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

54.     Based on the above-noted statutory language, mortgage language and terms of the Servicing Agreement between Nationstar and Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder, Nationstar was undoubtedly "act[ing]" as a "third-party loan servicer" without a license when Nationstar collected such unlicensed servicing fees and initiated and effectuated foreclosure proceedings on the Santos residential property.

55.    In furtherance of such unlicensed foreclosure activity, Nationstar attempted to collect periodic payments from Santos by sending periodic mortgage statements, sent Santos notices of default/ acceleration, instructed, hired and made payments to attorneys, auctioneers and publications to foreclose on the Santos residential property and paid for all costs of foreclosure and eviction as an unlicensed third-party loan servicer on the Santos residence with Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder's consent.

56.    The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(14) which states "[I]t is a violation of this chapter for a person to: Knowingly or recklessly facilitate the illegal foreclosure of real property collateral".

57.    The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(17) which states "[I]t is a violation of this chapter for a person to: Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license ad required under this chapter".

58.    Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states:

§ 19-14-26. Penalty for violations.

Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

59.    On or about December 20, 2015, Nationstar caused to be sent to the Santos Plaintiffs a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of February 12, 2016. Nationstar also caused to published said notice on January 21, 2016, January 28, 2016 and February 4, 2016.

60.    The Santos Plaintiffs allege that from July 1, 2015 through August 29, 2017, including on December 20, 2015 through May 25, 2016, Nationstar was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

61.    The Santos Plaintiffs allege, that on February 12, 2016, Nationstar, acting as third-party loan servicer foreclosed the Santos Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

62.    The Santos Plaintiffs allege, that on March 7, 2016, Nationstar executed a Foreclosure Deed granting the property to Nationstar.  The Foreclosure Deed was recorded on May 25, 2016 in the Town of Cumberland Land Evidence Records in Book 1710 at Page 862.  Such action is were violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and in breach of the ""applicable law"" provisions to the Statutory Power of Sale in the mortgage contract and are void, invalid, and without force and effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

63.    The Santos Plaintiffs allege, that the foreclosure and sale are in breach of Paragraph 18 of the Santos Mortgage, which requires that, "…[the Lender] may invoke the STATUTORY POWER

OF SALE and any other remedies [as] permitted by "applicable law"..." (Emphasis Added)."  As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Santos Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"".

64.     As all actions of Nationstar in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Nationstar failed in its' obligation to the Plaintiffs to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"", thus breaching the Santos Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

65.     As such, the notice, publication, foreclosure and sale are in breach of the terms of Paragraph 18 of the Santos Mortgage contract due to Defendant failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

66.     In addition, the Santos Plaintiffs herein allege that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with them before three full monthly installments due on the mortgage were unpaid, and that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

67.     The Santos Plaintiffs allege that the acceleration, foreclosure, and sale are in breach of the Santos Mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid

68.     The Santos Plaintiffs herein allege that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with her <u>before three full monthly installments due on the mortgage were unpaid</u>, and that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

69.     The Santos Plaintiffs further allege that the subject property is within 200 miles of a branch office of the mortgagee; and that the Santos Plaintiffs occupied the mortgaged property as their primary residence at the time of their default; and they never clearly indicated to any Lender, servicer, mortgagee, note holder, or agent of any of the foregoing that they would not cooperate with such an interview; and they did not enter into a repayment plan, where payments thereunder were current, consistent with their circumstances to bring their account current, thus making a meeting unnecessary.

70.     Defendant's acceleration of the debt, foreclosure, and purported mortgagee's sale is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

71.     The Santos Plaintiffs herein seek a declaratory judgment that the acceleration, foreclosure and sale are void and without force and effect and prays this Honorable Court find that Nationstar is in breach of contract at paragraph 9(d) and in violation of 24 CFR 203.604(b).

72.    The Santos Plaintiffs are entitled to Orders enjoining the Defendant Nationstar from foreclosure, sale, and/or conveyance of the subject property pending a determination by this Court verifying the validity of the Santos Plaintiffs claims, rescinding any foreclosure and sale and returning the Santos Plaintiffs to their status prior to any wrongful foreclosure and sale, and that Nationstar pay actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief in amounts to be determined at trial.

73.    Additionally, Plaintiffs aver that the Defendants collected illegal and unlicensed servicing fees from the mortgage loan account that were taken from the payments and/or liquidation proceeds of the foreclosure on the Plaintiffs' property as well as illegally collected from the Plaintiffs' loan account.  Such illegal and unlicensed fees were caused by the Defendants' breach and should be credited to the Plaintiffs as damages in accordance with Paragraph 14 of the Mortgage, or a similar mortgage provision, as well as R.I.G.L. § 19-14-26.1(b).

74.    The Santos Plaintiffs and members of the class are entitled to damages for the untimely loss of their property that was caused by the Defendant's failure to comply with applicable law. See. Andrade v. Ocwen Loan Servicing, LLC, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021).

75.    The unauthorized and wrongful foreclosure sale and deed resulted in damages to the Santos Plaintiffs for the use and occupancy value of the property, moving costs, rents, costs and expenses to live elsewhere.

**ALLEGATIONS OF THE KRAUS REPRESENTATIVE PLAINTIFF**

76.    The Kraus Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

77.     Representative Plaintiff, Judith Ann Kraus, claims to be the rightful owner of 522 West Shore Road, Warwick, RI 02889 which is the "subject property" referenced herein.

78.     On September 18, 2009, the Kraus Plaintiff was conveyed the subject property. The Deed granting the property to the Kraus Plaintiff was recorded in the City of Warwick Land Evidence Records in Book 7142, at page 1 on September 21, 2009.

79.     On September 18, 2009, the Kraus Plaintiff executed a promissory note and mortgage deed in favor of Sovereign Bank as lender and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee. ("Kraus Mortgage/Note"). The Kraus Mortgage was recorded in the City of Warwick Land Evidence Records in Book 7142, at page 3 on September 21, 2009.

80.     The Kraus Mortgage was designated as an "FHA" mortgage and was noted as such on the mortgage itself on page one (1) with the "FHA case number" 451-1058507.

81.     Mortgages insured by the Federal Housing Authority (FHA) and their corresponding underlying obligations (notes) are originated and or serviced by entities, such as Defendant, Nationstar, and are pooled and transferred into mortgage-backed trusts. Trusts backed by FHA insured mortgage loans are administrated by Government National Mortgage Association (Ginnie Mae) or other government entities and unidentified assigns which are the actual holders and owners of the loans.  Therefore, Nationstar was acting as a third-party loan servicer for the Kraus loan at all times during the allegations set forth in this Complaint

82.     The Plaintiff Kraus' FHA standard mortgage contract at Paragraph 9(d) states that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

83.    At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. 24 CFR 203.604(c) further states that a face-to-face meeting is not required if: **(1)** the mortgagor does not reside in the mortgaged property, **(2)** the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, **(3)** the mortgagor has clearly indicated that he will not cooperate in the interview, **(4)** a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or **(5)** a reasonable effort to arrange a meeting is unsuccessful.

84.    24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property

85.    The Kraus Mortgage also states at Paragraph 18 as follows;

> "18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies **permitted by applicable law.**  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13.  Lender shall publish a notice of sale, and **the Property shall be sold in the manner prescribed by applicable law.** . . " (emphasis added)

86.    On September 8, 2014, the Kraus Mortgage was assigned to Nationstar.  Said purported "Assignment of Mortgage" was recorded in the City of Warwick Land Evidence Records in Book 8241 Page 205 on September 17, 2014.

87.    At the time of the allegations in this complaint Nationstar was the third party loan servicer of the Kraus loan

88.    On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states:

> § 19-14.11-1 License required. [Effective July 1, 2015.]. –  (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

89.    R.I.G.L. § 19-14-1 (39) defines a "Third Party Loan Servicer" in relevant part as an "entity that owns the servicing rights to a loan secured by residential real estate located in Rhode Island whether or not that owner services the loan themselves or contracts with another person or entity for the servicing".

90.    R.I.G.L. § 19-14-1 (33) defines "Servicing" in relevant part as "receiving a scheduled, periodic payment from a borrower pursuant to the terms of a loan, including amounts for escrow accounts and making the payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower *as may be required pursuant to the terms of the servicing loan documents or servicing contract"*.

91.    The Defendant, Nationstar is a party to a pooling and servicing Agreement with Ginnie Mae, FHA, the Secretary of HUD or a third-party noteholder, which granted or assigned Nationstar ownership of the servicing rights of the Kraus' residential mortgage.

92.     Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Kraus loan, was responsible for receiving scheduled periodic payments of principal, interest and escrow on the Kraus loan, as well as "making payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower".

93.     Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Kraus loan, was responsible for initiating and effectuating foreclosure proceedings consistent with applicable law, upon Kraus' default, with Ginnie Mae, FHA, the Secretary of HUD or a third-party noteholder's consent.  Furthermore, Nationstar, as third-party loans servicer, was required to make payments for out-of-pocket costs, including but not limited to, foreclosure and eviction fees and foreclosure and eviction expenses pursuant to the Servicing Agreement.

94.     Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer, collected illegal and unlicensed servicing fees during the period of non-licensure based on a percentage of the principal balance of the loans in the pool of loans owned by the Trust.

95.     The illegal and unlicensed servicing fees consisting of a yearly percentage of the principal balance of the loans in the trust including the Kraus loan, were collected by the Defendant from the monthly payments of the loan and/ or were collected from the liquidation proceeds of the mortgage when the property was foreclosed on.

96.     Additionally, Nationstar, as third-party loan servicer, charged illegal and unlicensed servicing fees to the Plaintiffs' accounts including but not limited to, inspection fees, convenience fees, attorneys fees, REO BPO fees, appraisal fees, maintenance fees, eviction and wire fees.

97.    Plaintiff avers that Nationstar collected these servicing fees in breach of the mortgage which states at Paragraph 14, or a similar mortgage provision, that such charges are "governed . . . by the law in the jurisdiction where the property is located".

98.    According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

99.    24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below".  Plaintiff avers that the collection of unlicensed servicing fees and advances are neither reasonable or customary.

100.    No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

101.    Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

102.    Based on the above-noted statutory language, mortgage language and terms of the Servicing Agreement between Nationstar and Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder, Nationstar was undoubtedly "act[ing" as a "third-party loan servicer" without a

license when Nationstar collected such unlicensed servicing fees and initiated and effectuated foreclosure proceedings on the Kraus residential property.

103.    In furtherance of such unlicensed foreclosure activity, Nationstar attempted to collect periodic payments from Kraus by sending periodic mortgage statements, sent Kraus notices of default/ acceleration, instructed, hired and made payments to attorneys, auctioneers and publications to foreclose on the Kraus residential property and paid for all costs of foreclosure and eviction as an unlicensed third-party loan servicer on the Kraus residence with Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder's consent.

104.    The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(14) which states "[I]t is a violation of this chapter for a person to: Knowingly or recklessly facilitate the illegal foreclosure of real property collateral".

105.    The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(17) which states "[I]t is a violation of this chapter for a person to: Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license ad required under this chapter"..

106.    Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states:

> § 19-14-26. Penalty for violations.
>
> Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this

chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

107.    On or about September 22, 2015, Nationstar caused to be sent to the Kraus Plaintiff a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of November 13, 2015. Nationstar also caused to published said notice on October 22, 2015, October 29, 2015 and November 5, 2015.

108.    The Kraus Plaintiff alleges that from July 1, 2015 through August 29, 2017, including on September 22, 2015 through January 22, 2016, Nationstar was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

109.    The Kraus Plaintiff alleges, that on November 13, 2015, Nationstar, acting as third-party loan servicer foreclosed the Kraus Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

110.    The Kraus Plaintiff alleges, that on December 3, 2015, Nationstar executed a Foreclosure Deed granting the property to Nationstar.  The Foreclosure Deed was recorded on January 22, 2016 in the City of Warwick Land Evidence Records in Book 8515 at Page 128.  Such action is were violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and in breach of the ""applicable law"" provisions to the Statutory Power of Sale in the mortgage contract and are void, invalid, and without force and effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

111.    The Kraus Plaintiff alleges, that the foreclosure and sale are in breach of Paragraph 18 of the Kraus Mortgage, which requires that, "…[the Lender] may invoke the STATUTORY POWER OF SALE and any other remedies [as] permitted by "applicable law"…" (Emphasis Added)."  As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Kraus Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"".

112.    As all actions of Nationstar in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Nationstar failed in its' obligation to the Plaintiffs to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"", thus breaching the Kraus Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

113.    As such, the notice, publication, foreclosure and sale are in breach of the terms of Paragraph 18 of the Kraus Mortgage contract due to Defendant failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

114.    In addition, the Kraus Plaintiff herein alleges that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with them before three full monthly installments due on the mortgage were unpaid, and that no Lender, servicer,

mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

115.   The Kraus Plaintiff alleges that the acceleration, foreclosure, and sale are in breach of the Kraus Mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid

116.   The Kraus Plaintiff herein alleges that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with her before three full monthly installments due on the mortgage were unpaid, and that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

117.   The Kraus Plaintiff further alleges that the subject property is within 200 miles of a branch office of the mortgagee; and that the Kraus Plaintiffs occupied the mortgaged property as their primary residence at the time of their default; and they never clearly indicated to any Lender, servicer, mortgagee, note holder, or agent of any of the foregoing that they would not cooperate with such an interview; and they did not enter into a repayment plan, where payments thereunder were current, consistent with their circumstances to bring their account current, thus making a meeting unnecessary.

118.   Defendant's acceleration of the debt, foreclosure, and purported mortgagee's sale is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

119.    The Kraus Plaintiff herein seeks a declaratory judgment that the acceleration, foreclosure and sale are void and without force and effect and prays this Honorable Court find that Nationstar is in breach of contract at paragraph 9(d) and in violation of 24 CFR 203.604(b).

120.    The Kraus Plaintiff is entitled to Orders enjoining the Defendant Nationstar from foreclosure, sale, and/or conveyance of the subject property pending a determination by this Court verifying the validity of the Kraus Plaintiff's claims, rescinding any foreclosure and sale and returning the Kraus Plaintiffs to their status prior to any wrongful foreclosure and sale, and that Nationstar pay actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief in amounts to be determined at trial.

121.    The Kraus Plaintiff and members of the class are entitled to damages for the untimely loss of their property that was caused by the Defendant's failure to comply with applicable law.  See. Andrade v. Ocwen Loan Servicing, LLC, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021).

122.    The unauthorized and wrongful foreclosure sale and deed resulted in damages to the Kraus Plaintiff for the use and occupancy value of the property, moving costs, rents, costs and expenses to live elsewhere.

123.    Additionally, Plaintiffs aver that the Defendants collected illegal and unlicensed servicing fees from the mortgage loan account that were taken from the payments and/or liquidation proceeds of the foreclosure on the Plaintiffs' property as well as illegally collected from the Plaintiffs' loan account.  Such illegal and unlicensed fees were caused by the Defendants' breach and should be credited to the Plaintiffs as damages in accordance with Paragraph 14 of the Mortgage, or a similar mortgage provision, as well as R.I.G.L. § 19-14-26.1(b).

## ALLEGATIONS OF THE BELANGER REPRESENTATIVE PLAINTIFF

124.    The Belanger Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

125.    Representative Plaintiff, Denise L. Belanger, claims to be the rightful owner of 78 Wood Street, Warwick, RI 02889 which is the "subject property" referenced herein.

126.    On July 22, 2009, the Belanger Plaintiff was conveyed the subject property. The Deed granting the property to the Belanger Plaintiff was recorded in the City of Warwick Land Evidence Records in Book 7107, at page 25 on July 23, 2009.

127.    On July 22, 2009, the Belenger Plaintiff executed a promissory note and mortgage deed in favor of Mortgage Master, Inc. as lender and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee. ("Belenger Mortgage/Note"). The Belenger Mortgage was recorded in the City of Warwick Land Evidence Records in Book 7107, at page 26 on July 23, 2009.

128.    The Belanger Mortgage was designated as an "FHA" mortgage and was noted as such on the mortgage itself on page one (1) with the "FHA case number" 451-1051879-703.

129.    Mortgages insured by the Federal Housing Authority (FHA) and their corresponding underlying obligations (notes) are originated and or serviced by entities, such as Defendant, Nationstar, and are pooled and transferred into mortgage-backed trusts. Trusts backed by FHA insured mortgage loans are administrated by Government National Mortgage Association (Ginnie Mae) or other government entities and unidentified assigns which are the actual holders and owners of the loans.  Therefore, Nationstar was acting as a third-party loan servicer for the Belanger loan at all times during the allegations set forth in this Complaint

130.    The Plaintiff Belanger's FHA standard mortgage contract at Paragraph 9(d) states that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's

rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

131.    At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. 24 CFR 203.604(c) further states that a face-to-face meeting is not required if: **(1)** the mortgagor does not reside in the mortgaged property, **(2)** the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, **(3)** the mortgagor has clearly indicated that he will not cooperate in the interview, **(4)** a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or **(5)** a reasonable effort to arrange a meeting is unsuccessful.

132.    24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property

133.    The Belanger Mortgage also states at Paragraph 18 as follows;

> "18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies **permitted by applicable law.** Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13. Lender shall publish a notice of sale, and **the Property shall be sold in the manner prescribed by applicable law.** . . " (emphasis added)

134.    On September 5, 2013, the Belanger Mortgage was assigned to Nationstar.  Said purported "Assignment of Mortgage" was recorded in the City of Warwick Land Evidence Records in Book 2268 Page 178 on September 17, 2013.

135.    At the time of the allegations in this complaint Nationstar was the third-party loan servicer of the Belanger loan

136.    On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states:

> § 19-14.11-1 License required. [Effective July 1, 2015.]. –  (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

137.    R.I.G.L. § 19-14-1 (39) defines a "Third Party Loan Servicer" in relevant part as an "entity that owns the servicing rights to a loan secured by residential real estate located in Rhode Island whether or not that owner services the loan themselves or contracts with another person or entity for the servicing".

138.    R.I.G.L. § 19-14-1 (33) defines "Servicing" in relevant part as "receiving a scheduled, periodic payment from a borrower pursuant to the terms of a loan, including amounts for escrow accounts and making the payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower *as may be required pursuant to the terms of the servicing loan documents or servicing contract"*.

139.    The Defendant, Nationstar is a party to a pooling and servicing Agreement with Ginnie Mae, FHA, the Secretary of HUD or a third-party noteholder, which granted or assigned Nationstar ownership of the servicing rights of the Belanger residential mortgage.

140.    Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Belanger loan, was responsible for receiving scheduled periodic payments of principal, interest and escrow on the Belanger loan, as well as "making payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower".

141.    Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer of the Belanger loan, was responsible for initiating and effectuating foreclosure proceedings consistent with applicable law, upon Belanger's default, with Ginnie Mae, FHA, the Secretary of HUD or a third-party noteholder's consent.  Furthermore, Nationstar, as third-party loans servicer, was required to make payments for out-of-pocket costs, including but not limited to, foreclosure and eviction fees and foreclosure and eviction expenses pursuant to the Servicing Agreement.

142.    Pursuant to the terms of the pooling and servicing agreement, Nationstar, as third-party loan servicer, collected illegal and unlicensed servicing fees during the period of non-licensure based on a percentage of the principal balance of the loans in the pool of loans owned by the Trust.

143.    The illegal and unlicensed servicing fees consisting of a yearly percentage of the principal balance of the loans in the trust including the Belanger loan, were collected by the Defendant from the monthly payments of the loan and/ or were collected from the liquidation proceeds of the mortgage when the property was foreclosed on.

144.    Additionally, Nationstar, as third-party loan servicer, charged illegal and unlicensed servicing fees to the Plaintiffs' accounts including but not limited to, inspection fees, convenience fees, attorneys fees, REO BPO fees, appraisal fees, maintenance fees, eviction and wire fees.

145.    Plaintiff avers that Nationstar collected these servicing fees in breach of the mortgage which states at Paragraph 14, or a similar mortgage provision, that such charges are "governed . . . by the law in the jurisdiction where the property is located".

146.    According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

147.    24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below". Plaintiffs aver that the collection of unlicensed servicing fees and advances are neither reasonable or customary

148.    No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

149.    Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

150.   Based on the above-noted statutory language, mortgage language and terms of the Servicing Agreement between Nationstar and Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder, Nationstar was undoubtedly "act[ing" as a "third-party loan servicer" without a license when Nationstar collected such unlicensed servicing fees and initiated and effectuated foreclosure proceedings on the Belanger residential property.

151.   In furtherance of such unlicensed foreclosure activity, Nationstar attempted to collect periodic payments from Belanger by sending periodic mortgage statements, sent Belanger notices of default/ acceleration, instructed, hired and made payments to attorneys, auctioneers and publications to foreclose on the Belanger residential property and paid for all costs of foreclosure and eviction as an unlicensed third-party loan servicer on the Belanger residence with Ginnie Mae, FHA, the Secretary of HUD or a third party noteholder's consent.

152.   The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(14) which states "[I]t is a violation of this chapter for a person to: Knowingly or recklessly facilitate the illegal foreclosure of real property collateral".

153.   The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(17) which states "[I]t is a violation of this chapter for a person to: Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license ad required under this chapter"..

154.   Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states:

        § 19-14-26. Penalty for violations.

Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

155.   On or about March 12, 2017, 2017, Nationstar caused to be sent to the Belanger Plaintiff a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of May 3, 2017. Nationstar also caused to published said notice on April 12, 2017, April 19, 2017 and April 26, 2017.

156.   The Belanger Plaintiff alleges that from July 1, 2015 through August 29, 2017, including on March 12, 2017 through July 12, 2017, Nationstar was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

157.   The Belanger Plaintiff alleges, that on May 3, 2017, Nationstar, acting as third-party loan servicer foreclosed the Belanger Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendant's failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

158.   The Belanger Plaintiff alleges, that on May 15, 2017, Nationstar executed a Foreclosure Deed granting the property to Nationstar.  The Foreclosure Deed was recorded on July 12, 2017 in the City of Warwick Land Evidence Records in Book 8856 at Page 199.  Such action is were violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and in breach of the ""applicable law"" provisions to the Statutory Power of

Sale in the mortgage contract and are void, invalid, and without force and effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

159.    The Belanger Plaintiff alleges, that the foreclosure and sale are in breach of Paragraph 18 of the Belanger Mortgage, which requires that, "…[the Lender] may invoke the STATUTORY POWER OF SALE and any other remedies [as] permitted by "applicable law"…" (Emphasis Added)."  As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Belanger Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"".

160.    As all actions of Nationstar in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Nationstar failed in its' obligation to the Plaintiffs to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"", thus breaching the Belanger Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

161.    As such, the notice, publication, foreclosure and sale are in breach of the terms of Paragraph 18 of the Belanger Mortgage contract due to Defendant failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendant failure to comply with conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

162.     In addition, the Belanger Plaintiff herein alleges that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with them <u>before three full monthly installments due on the mortgage were unpaid</u>, and that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

163.     The Belanger Plaintiff alleges that the acceleration, foreclosure, and sale are in breach of the Belanger Mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid

164.     The Belanger Plaintiff herein alleges that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever had a face-to-face interview with her <u>before three full monthly installments due on the mortgage were unpaid</u>, and that no Lender, servicer, mortgagee, note holder, or agent of any of the foregoing ever made an effort to arrange such a meeting.

165.     The Belanger Plaintiff further alleges that the subject property is within 200 miles of a branch office of the mortgagee; and that the Belanger Plaintiffs occupied the mortgaged property as their primary residence at the time of their default; and they never clearly indicated to any Lender, servicer, mortgagee, note holder, or agent of any of the foregoing that they would not cooperate with such an interview; and they did not enter into a repayment plan, where payments thereunder were current, consistent with their circumstances to bring their account current, thus making a meeting unnecessary.

166.     Defendant's acceleration of the debt, foreclosure, and purported mortgagee's sale is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states

that a mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

167.    The Belanger Plaintiff herein seeks a declaratory judgment that the acceleration, foreclosure and sale are void and without force and effect and prays this Honorable Court find that Nationstar is in breach of contract at paragraph 9(d) and in violation of 24 CFR 203.604(b).

168.    The Belanger Plaintiff is entitled to Orders enjoining the Defendant Nationstar from foreclosure, sale, and/or conveyance of the subject property pending a determination by this Court verifying the validity of the Belanger Plaintiff's claims, rescinding any foreclosure and sale and returning the Belanger Plaintiffs to their status prior to any wrongful foreclosure and sale, and that Nationstar pay actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief in amounts to be determined at trial.

169.    The Belanger Plaintiff and members of the class are entitled to damages for the untimely loss of their property that was caused by the Defendant's failure to comply with applicable law. See. Andrade v. Ocwen Loan Servicing, LLC, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021).

170.    The unauthorized and wrongful foreclosure sale and deed resulted in damages to the Belanger Plaintiff for the use and occupancy value of the property, moving costs, rents, costs and expenses to live elsewhere.

171.    Additionally, Plaintiffs aver that the Defendants collected illegal and unlicensed servicing fees from the mortgage loan account that were taken from the payments and/or liquidation proceeds of the foreclosure on the Plaintiffs' property as well as illegally collected from the Plaintiffs' loan account.  Such illegal and unlicensed fees were caused by the Defendants' breach

and should be credited to the Plaintiffs as damages in accordance with Paragraph 14 of the Mortgage, or a similar mortgage provision, as well as R.I.G.L. § 19-14-26.1(b).

## CLASS ALLEGATIONS

172.    The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

173.    Plaintiffs bring this action as a Class Action pursuant to R.I. R. Civ. P. Rule 23.

174.    The Representative Plaintiffs sue on behalf of themselves and all homeowners or former homeowners wherein Defendants breached the terms of the Representative Plaintiffs and Class Members mortgages by failing to foreclose and sell in the manner prescribed by ""applicable law"" when conducting foreclosures and mortgagee's sales between July 1, 2015 through August 29, 2017, in violation of R.I.G.L. § 19-14.11-1 and in violation of the Emergency Order issued by the Rhode Island Department of Business Regulation Division of Banking, ordering that Nationstar immediately cease and desist all unlicensed activity as a third-party loan servicer.

175.    The Representative Plaintiffs sue on behalf of herself and all homeowners or former homeowners since February 2010 wherein Defendant failed to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage were unpaid; whose properties were within 200 miles of a branch office of the Defendant; who occupied the mortgaged property as their primary residence; who never clearly indicated to the Defendant that they would not cooperate with such an interview; and who did not enter into a repayment plan, where payments thereunder were current, consistent with the their circumstances to bring the their account current thus making a meeting unnecessary, in breach of the mortgage contract at paragraph 9(d) and in violation of 24 CFR 203.604(b).

176.    Representative Plaintiffs further seek damages for the untimely loss of their property that was caused by the Defendant's failure to comply with applicable law. See. Andrade v. Ocwen Loan Servicing, LLC, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021)

177.    The unauthorized and wrongful foreclosure sale and deed resulted in damages to the Class Plaintiffs for the use and occupancy values of the properties, the current fair market values of their properties, loss of property, loss of equity and higher deficiency balances of their loans, moving costs, rents, costs and expenses to live elsewhere.

178.    Additionally, Representative Plaintiffs, on behalf of themselves and all other so similarly situated, hereby bring a separate class action count for breaches of contract based on the Defendants' charging of illegal and unlicensed third party loan servicing fees "expressly prohibited" by "the Security Instruments or by Applicable Law"

179.    According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

180.    24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below".  Plaintiffs aver that the collection of unlicensed servicing fees and advances are neither reasonable or customary

181.    No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

182.    Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

183.    Representative Plaintiffs set forth that the Class Plaintiffs be credited for all illegal unlicensed servicing fees "involving" their mortgage loan accounts for the Defendants' breach of their mortgage loan accounts.

184.    The Class Plaintiffs consist of all residential mortgage loan accounts in which the Defendants collected illegal and unlicensed servicing fees in violation of R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) regardless of whether or not the properties were foreclosed on and whose mortgages contain the above provision or a similar provision that the Defendants' collection of such illegal and unlicensed servicing fees are subject to "applicable law".

185.    The gravity of harm to the Representative Plaintiffs and members of the class resulting from the Defendants wrongdoing outweighs any conceivable reasons, justifications and/or motives of said Defendants for engaging in such unfair acts and practices.

186.    Defendant's conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

187.    The Representative Plaintiffs and members of the class suffered quantifiable damages such as illegal servicing fees, loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

188.    The Representative Plaintiffs and members of the class have suffered general damages such as loss of property interest, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme mental and emotional distress.

189.    The Representative Plaintiffs and members of the class seek actual, exemplary, punitive, and monetary damages.

190.    The Representative Plaintiffs claim on behalf of themselves and all others so similarly situated that the Defendants breaches of mortgage contracts by violating R.I.G.L. § 19-14.11-1 and failure to comply with applicable law as a condition precedent prior to exercising the Statutory Power of Sale, are the direct causes of the harms alleged herein.

191.    Representative Plaintiffs claim on behalf of themselves and all others so similarly situated that the Defendant's, breach of mortgage contracts at 9(d) and violations of 24 CFR 203.604(b), are the direct cause of the harms alleged herein.

192.    Representative Plaintiffs, on behalf of themselves and all others so similarly situated, claim that all foreclosures that occurred as a result of any foreclosure notices sent or published during the time in which Nationstar was not licensed as a third-party servicer are null and void for failure to comply with the condition precedent to Statutory Power of Sale outlined in the mortgages that the Defendants foreclose in the manner subject to and as prescribed by ""applicable law"".

193.    The Representative Plaintiffs do not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendants. The Representative Plaintiffs believe that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendants books and records.  Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

194.    The Representative Plaintiffs and all members of the class have been subject to and affected by the same conduct.

195.    The questions of law and fact are common to the class and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

196.    The claims of the Representative Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Representative Plaintiffs and the other members of the class were subject to the same conduct. (i.e. Typicality).

197.    The Representative Plaintiffs will fairly and adequately represent the interests of the class as a whole.  The Representative Plaintiffs are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

198.    A Class Action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

199.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

200.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

201.    It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

202.    The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

203.    It is desirable to concentrate the litigation of the claims in this particular forum.

204.    There are little to no difficulties likely to be encountered in the management of a classification.

<u>COUNT I</u>
**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT PRIOR TO EXERCISE THE STATUTORY POWER OF SALE (SERVICING LICENSE ALLEGATIONS)**

205.    The Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

206.    In Rhode Island, the right to exercise the power of sale in a mortgage is derived from the mortgage contract itself.

207.    In Rhode Island, a contract containing a requirement that any foreclosure and sale be conducted in a manner subject to and/or as prescribed by ""applicable law"" is construed as a condition precedent, which requires strict compliance.

208.    The Plaintiffs' Mortgages provide that any notice, foreclosure, and sale be conducted in a manner subject to and as prescribed by ""applicable law"" at Paragraph 18.

209.    In Rhode Island, a mortgagee agreeing to provide notice, foreclose and sell in a manner subject to and/or as prescribed or permitted by "applicable law", must do so as agreed.

210.    In Rhode Island, the power to sell by foreclosure sale is derived from the mortgage and statute, and strict compliance with the requirements of Paragraph 18 of the mortgages are obligations of the mortgagees.  Failing to provide notice, foreclose and sell in a manner subject to and/or as prescribed or permitted by "applicable law" pursuant to the mortgage is a breach of contract and renders a foreclosure sale void.

211.    As noted above, the Plaintiffs' Mortgages state at Paragraph 18 as follows;

"18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies **permitted by applicable law.** Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13. Lender shall publish a notice of sale, and **the Property shall be sold in the manner prescribed by applicable law.** . . " (emphasis added)

212.    On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states;

§ 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

213.    Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states;

§ 19-14-26. Penalty for violations.

Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

214.    The Plaintiffs allege that at the time of the Foreclosure Notice on June 14, 2016, the time of the foreclosure publications on July 19, 2016, July 31, 2016 and August 2, 2016, , the time of the auction on August 9, 2016, at the time of the execution of the foreclosure deed on October 11,

2016 and the time of the recording of the foreclosure deed on October 13, 2016, Nationstar was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

215.    Plaintiffs aver that all acts described above were in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and are void, invalid, and without force and effect, for Defendant failure to comply with applicable law as a conditions precedent prior to exercising the Statutory Power of Sale.

216.    The Plaintiffs allege, that the foreclosure and sale are in breach of Paragraph 18 of the Santos Mortgage, which requires that, "…subject to "applicable law", [Lender] may then thereafter invoke the **STATUTORY POWER OF SALE** and/or any other remedies or take any other actions permitted by "applicable law"…" (Emphasis Added). As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the properties secured by the Plaintiffs' Mortgages can only be sold in a manner prescribed by and subject to ""applicable law"". As all actions of Nationstar in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and are subject to criminal penalties by the Attorney General pursuant to R.I.G.L. § 19-14-26, Nationstar failed its' obligation to the Plaintiffs to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"", thus breaching the Plaintiffs' Mortgages and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

217.    As such, the notice, publication, foreclosure and sale are in breach of the terms of paragraph 18 of the Representative Plaintiffs' Mortgage contracts due to Defendant failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosures and sales are void, invalid, and without force or effect, for Defendant failure to comply with conditions

precedent prior to exercising the Statutory Power of Sale. (See: <u>Martins v. Federal Housing Finance Agency, et al.</u>, C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: <u>In re Demers</u>, <u>511 B.R. 233</u>, 238, 239 (Bankr. D.R.I. 2014)).

218.    The mortgage contracts entered into by the Plaintiffs constitute valid offers.

219.    Upon the Plaintiffs executing those mortgage contracts and giving them to their Lenders, their Lenders accepted those offers.

220.    Alternatively, the Plaintiffs and execution of those mortgage contracts thereby giving security interests in their property to their Lenders constitute offers.  Acceptance of those offers occurred when Defendant accepted payments made by the Representative Plaintiffs pursuant to their mortgage contracts.

221.    The mortgage contracts were supported by consideration.  The Plaintiffs' payments to Defendant constitutes consideration.

222.    The Plaintiffs, and Defendant thereby formed a valid contract and the Plaintiffs and was, is, and remains ready willing and able to perform under the contract.

223.    Defendant breached the mortgage contract made with the Plaintiffs by refusing to honor the terms of the mortgage contract by failing to abide by "applicable law" when foreclosing and conducting a mortgagee's foreclosure sale.

224.    There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

225.    No Foreclosure Notice was sent to the Plaintiffs which specifically complied with the condition precedent obligations to foreclosure of the Lender as set forth in said mortgage contract.

226.    Due to these failures to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and notice, publish, foreclose and sell at

mortgagee's sale the property of the Plaintiffs. These actions constitute breach of contracts, and failure to abide by conditions precedent as stated in the mortgages of the Plaintiffs, resulting in damages to the Plaintiffs.

227.    As a result of the Defendant's improper and invalid notices, publications, and exercise of the statutory power of sale and purported foreclosure sale, the Plaintiffs' mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in his monthly mortgage statements.

228.    The Plaintiffs have incurred damages in hiring an attorney, in regard to the improper actions of Defendant in noticing,and seeking to conduct and/or conducting foreclosure and sale without first complying with "applicable law" as a conditions precedent to the Statutory Power of Sale as required by the mortgage of the Plaintiffs.

229.    The Plaintiffs have also incurred mental and emotional injuries and damages due to the improper foreclose and sale of his property by Defendant without first complying with "applicable law" as a conditions precedent to the Statutory Power of Sale as required by the mortgages of the Plaintiffs.

230.    The Plaintiffs have suffered harm and is threatened with additional harm from Defendant breaches, including but not limited to higher principal balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default.

231.    The Defendant breach of contract and failure to comply with the condition precedent as noted herein above, is the direct cause of the harms alleged herein and not the Plaintiffs' failure to make their mortgage payments.

232.     Therefore, the Plaintiffs would not have suffered the foreclosure, sale, or the harms as noted herein were it not for the Defendant breach of the mortgage contract and failure to comply with "applicable law" as a conditions precedent as required by the mortgage of the Plaintiffs as noted herein.

233.     The Santos Plaintiffs and member of the class are entitled to damages for the untimely loss of their property that was caused by the Defendant's failure to comply with applicable law.  See. Andrade v. Ocwen Loan Servicing, LLC, C.A. Nos. 18-385 WES, 20-032 WES, 20-036 WES, 20-037 WES, 20-040 WES, 20-063 WES, 20-416 WES, (Dist. Ct. D, RI, May 25, 2021).

234.     The Plaintiffs are entitled to a declaratory judgment determining that the notices, publications, foreclosure, and mortgagee's foreclosure sales of their properties are void due to the Defendant's failure to comply with the condition precedent obligations to notice, foreclose, and sell in a manner prescribed by "applicable law", pursuant to the mortgage contract.

235.     The Plaintiffs are entitled to cancellation of costs and fees assessed to him for wrongful foreclosure, together with additional damages.

236.     The Plaintiffs are entitled to be returned to his status and circumstances prior to the foreclosure, and sale of his property.

237.     The Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE (FACE-TO-FACE MEETING ALLEGATIONS)

238.     Plaintiffs repeat and reincorporate by reference all paragraphs above as if fully articulated herein.

239.    Rhode Island permits non-judicial foreclosure under the statutory power of sale contained so long as the terms of the mortgage and the statutes related to the power of sale are strictly complied with.

240.    Foreclosure by power of sale requires that a foreclosing bank must comply with the terms of the mortgage.

241.    If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void.

242.    The mortgages given by Plaintiffs secured by the subject property states at Paragraph 9(d) as follows:

> 9(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

It is a regulation of the Secretary codified in 24 CFR 203.604(b) that:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid...   (See: 24 CFR .604(b)).

The "mortgagee" as defined by 24 CFR § 202.2 failed to have a face-to-face meeting with Plaintiffs before three full monthly installments due on the mortgage were unpaid. Further, said mortgagee failed to make reasonable efforts to arrange such a meeting with Plaintiffs.

243.    Plaintiffs mortgages incorporated the HUD regulations, which required a face-to-face meeting.

244.    The mortgagee failed to have any face-to-face meetings with Plaintiffs.

245.    As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

246.    Plaintiffs were not provided the opportunity to have a face-to-face meeting pursuant to 24 CFR 203.604.

247.    No face-to-face meeting was scheduled for Plaintiffs by the mortgagee, Nationstar or any loan servicer or any owner of the Plaintiffs' Mortgages or Notes.

248.    No default letter was sent to Plaintiffs after a face-to-face meeting had occurred or which had been scheduled and had been rejected by Plaintiffs.

249.    Nationstar never sent Plaintiffs a default notice or acceleration notice after they had been provided a face-to-face meeting. As a result, no acceleration letter could be sent to Plaintiffs, nor could the mortgagee exercise the statutory power of sale.

250.    Pursuant to the terms of the Plaintiffs' Mortgages, a face-to-face meeting with the mortgagee or the loan servicer pursuant to the provisions of paragraph 9(d) of those mortgages was a condition precedent to acceleration and the exercise of the statutory power of sale.

251.    Plaintiffs thus never received an acceleration notice pursuant to the terms of the mortgage.

252.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiffs' Mortgages and sell the subject properties at mortgagee's foreclosure sale. These actions constituted a breach of contract, resulting in damages to the Plaintiffs.

253.    As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiffs' mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

254.    The Plaintiffs have incurred damages in hiring an attorney, in regard to the improper actions of Nationstar in sending a Notice of Foreclosure Sale and seeking to conduct a sale without first complying with the terms of the mortgage.

255.    Plaintiffs have also incurred emotional injuries and damages due to the improper foreclosure and sale of their home without Nationstar first complying with the terms of the Santos Mortgage.

256.    The Plaintiffs have incurred legal fees for the prosecution of this action as a result of Nationstar's the breach of contract by Nationstar as noted herein.

257.    Plaintiffs have suffered harm and are threatened with additional harm from Nationstar's breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

258.    Nationstar's breach of contract and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Plaintiffs' failure to make their mortgage payments.

259.    Plaintiffs were denied the opportunity to have a face-to-face meeting which would have enabled them to explore loss mitigation opportunities and strategies to deal with their default resulting in a resolution of default as HUD regulations codified at 24 CFR 203.604 were intended to accomplish.

260.    Therefore, Plaintiffs would not have suffered foreclosure, or the harms as noted herein were it not for the Nationstar's breach of the mortgage contract as noted herein.

261.    Nationstar's failure to comply with the terms of the mortgage is in violation of the Statutory Power of Sale. Any foreclosure is therefore void.

262.    The Plaintiffs are entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the foreclosure, and the mortgagee's foreclosure sale of the subject property are all void.

263.    The Plaintiffs are entitled to an injunction preventing the transfer of the right, title, and interest in their property.

264.    The Plaintiffs are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

265.    Plaintiffs are entitled to a Court Order requiring that Defendants take all necessary steps to return Plaintiffs to their status and circumstances prior to any wrongful acceleration, attempted foreclosure and sale, including but not limited to rescinding the foreclosure and sale.

266.    Plaintiffs are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## BREACH OF CONTRACT FOR ILLEGAL AND UNLICENSED SERVICING FEES

267.    The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

268.    Class Plaintiffs aver that Nationstar collected illegal and unlicensed servicing fees in breach of the mortgage which states that such collections were "expressly prohibited" by "the Security Instruments or by Applicable Law"

269.    According to the uniform covenants of the Representative Plaintiffs' FHA mortgages, such illegal unlicensed servicing fees and advances are not authorized by the Secretary of HUD as the mortgages state "Lender may collect fees and charges authorized by the Secretary".

270.    24 CFR 203.552 sets forth the types of fees a lender may collect from a mortgagor, where the mortgage is insured by FHA.  The regulation states "The mortgagee may collect reasonable fees and customary fees from the mortgagor after insurance endorsement only as provided below".  Plaintiffs aver that the collection of unlicensed servicing fees and advances are neither reasonable or customary

271.    No regulation of the Secretary of HUD authorizes the collection of unlicensed and illegal servicing fees and the Defendants' collection of such fees constitutes breaches of the mortgage contracts.

272.    Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

273.    On or about July 1, 2014, the Governor of Rhode Island signed into law R.I.G.L. § 19-14.11-1 which became effective July 1, 2015. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states:

> § 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

274.    R.I.G.L. § 19-14-1 (39) defines a "Third Party Loan Servicer" in relevant part as an "entity that owns the servicing rights to a loan secured by residential real estate located in Rhode Island

whether or not that owner services the loan themselves or contracts with another person or entity for the servicing".

275.    R.I.G.L. § 19-14-1 (33) defines "Servicing" in relevant part as "receiving a scheduled, periodic payment from a borrower pursuant to the terms of a loan, including amounts for escrow accounts and making the payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower *as may be required pursuant to the terms of the servicing loan documents or servicing contract"*.

276.    The Defendant, Nationstar, is a party to known or identifiable pooling and servicing Agreements with known or identifiable Defendants, including but not limited to the pooling and servicing agreements referenced in this complaint, which granted or assigned Nationstar ownership of the servicing rights of the Class Plaintiff's residential mortgage loans.   The Agreements identify or assign Nationstar as the "Servicer", of the known or identifiable pooling and servicing agreements as the names of the known or identifiable Trusts that hold the Class Plaintiffs' residential mortgage loans.

277.    Pursuant to the terms of the Pooling and Servicing Agreements, Nationstar, as third-party loan servicer of the Class Plaintiffs' loans, was responsible for receiving scheduled periodic payments of principal, interest and escrow on the Class Plaintiffs' loans, as well as "making payments to the owner of the loan or other third party of principal and interest and other payments with respect to the amounts received from the borrower".

278.    Pursuant to the terms of the Pooling and Servicing Agreements, Nationstar, as third-party loan servicer of the Class Plaintiffs' loans, was responsible for initiating and effectuating foreclosure proceedings consistent with applicable law, upon the Class Plaintiffs' defaults', with the Trustee's consent.  Furthermore, Nationstar, as third-party loans servicer, was required to make

payments for out-of-pocket costs, including but not limited to, foreclosure and eviction fees and foreclosure and eviction expenses pursuant to the Pooling and Servicing Agreements.

279.    Pursuant to the terms of the Pooling and Servicing Agreements, Nationstar, as third-party loan servicer, under the loans, collected illegal and unlicensed servicing fees during the period of Nationstar's non-licensure based on a yearly percentage of the principal balance of the Class Plaintiffs' loans in the pools of loans owned by the Trusts.

280.    The illegal and unlicensed servicing fees consisting of a yearly percentage of the principal balances of the Class Plaintiffs loans in the Trusts, were collected by the Defendants from the monthly payments of the loans and/ or were collected from the liquidation proceeds of the mortgages when the properties were foreclosed on

281.    Additionally, Nationstar, as third-party loan servicer, collected additional illegal and unlicensed servicing fees from the Plaintiffs' accounts including but not limited to, inspection fees, convenience fees, attorneys fees, REO BPO fees, appraisal fees, maintenance fees, eviction and wire fees.

282.    Class Plaintiffs aver that Nationstar collected these servicing fees in breach of the mortgage which states at Paragraph 14, or a similar mortgage provision, that such collections were "expressly prohibited" by "the Security Instruments or by Applicable Law" as, according to the language of the mortgages, such illegal and unlicensed servicing fees are "subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower".

283.   Representative Plaintiffs aver that such illegal and unlicensed third-party-loan-servicing fees yielded from members of the Class Plaintiffs accounts were subject to R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) which states that "[I]n the case of any unlicensed transaction involving lending. . ., the amount of interest, fees, or charges previously collected shall be credited to the principal balance of the loan then due and owing or paid to the debtor, at the option of the holder of the loan".

284.   Based on the above-noted statutory language, mortgage language and terms of the Servicing Agreement between Nationstar and the Trustees, Nationstar was undoubtedly "act[ing] as a "third-party loan servicer" without a license when Nationstar collected such unlicensed servicing fees and initiated and effectuated foreclosure proceedings on the Class Plaintiffs' residential properties.

285.   In furtherance of such unlicensed foreclosure activity, Nationstar attempted to collect periodic payments from Class Plaintiffs by sending periodic mortgage statements, causing to be sent Class Plaintiffs notices of default/ acceleration, instructed, hired and made payments to attorneys, auctioneers and publications to foreclose on the Class Plaintiffs' residential properties and paid for all costs of foreclosure and eviction as an unlicensed third-party loan servicer on the Class Plaintiffs' residences with the trustee's consent.

286.   The Class Plaintiffs in the servicing fee class consist of all residential mortgage loan accounts in which the Defendants collected illegal and unlicensed servicing fees in violation of R.I.G.L. § 19-14.11-1 as well as R.I.G.L. § 19-14-26.1(b) regardless of whether or not the properties were foreclosed on and whose mortgages contain the above provision or similar language that the Defendants' and mortgages are subject to "applicable law"

287.    The above-noted unlicensed activity constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(14) which states "[I]t is a violation of this chapter for a person to: Knowingly or recklessly facilitate the illegal foreclosure of real property collateral".

288.    The above-noted unlicensed activity also constituted "Prohibited acts and practices" for "Third-Party Loan Servicers" under R.I.G.L. § 19-14.11-4(17) which states "[I]t is a violation of this chapter for a person to: Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license ad required under this chapter.

289.    Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states:

> § 19-14-26. Penalty for violations.
>
> Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

290.    The Representative Plaintiffs allege that at the time the Nationstar collected servicing fees it was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1 and R.I.G.L. § 19-14.26-1(b) and that Nationstar's collection of such fees without "first obtaining a license" were violations of the condition precedent that it must first obtain a license in accordance with the applicable law provisions of said mortgages, as such actions were classified as misdemeanor crimes and not permitted by applicable law.

291.    The mortgage contract entered into by the Class Plaintiffs constitutes valid offers.

292.    Upon the Class Plaintiffs executing those mortgage contracts and giving them to their Lenders/ Mortgagee, their Lenders. Mortgagees accepted those offers.

293.    Alternatively, the Class Plaintiffs and execution of those mortgage contracts thereby giving security interests in their property to their Lenders/Mortgagees constitute offers.  Acceptance of those offers occurred when Defendants accepted payments made by the Class Plaintiffs pursuant to their mortgage contracts.

294.    The mortgage contracts were supported by consideration.  The Class Plaintiffs' payments to Defendants constitute consideration.

295.    The Class Plaintiffs, and Defendants thereby formed a valid contract and the Plaintiffs and were, are, and remain ready willing and able to perform under the contract.

296.    Defendants breached the mortgage contracts made with the Class Plaintiffs by charging and collecting illegal unlicensed servicing fees pursuant R.I.G.L. § 19-14.11-1 and R.I.G.L. § 19-14.26-1(b) which are applicable laws pursuant to the terms of the mortgage contracts which state that "subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.

297.    Due to these failures to comply with the terms of the mortgages, no entity was contractually authorized to charge or collect such fees, including but not limited to servicing fees, inspection fees, convenience fees, attorneys fees, REO BPO fees, appraisal fees, maintenance fees, eviction and wire fees. These actions constitute a breach of contract, and failure to abide by conditions

precedent as stated in the mortgages of the Class Plaintiffs, resulting in damages to the Class Plaintiffs.

298.    Class Plaintiffs aver that the Defendants collected illegal and unlicensed servicing fees from the mortgage loan that were taken from the interest and liquidation proceeds of the foreclosure on the Plaintiffs' property as well as illegally yielded from the Class Plaintiffs' loan accounts.  Such unlicensed fees were caused by the Defendants' breach and should be credited to the Class Plaintiffs as damages in accordance with the terms of the Mortgages as well as R.I.G.L. § 19-14-26.1(b).

Dated: November 30, 2022

Respectfully Submitted,
The Representative Plaintiffs,
By their Attorney,
*/s/ Todd S. Dion*
Todd S. Dion Esq. (#6852)
681 Park Avenue, Suite 24
Cranston, RI 02910
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## CERTIFICATE OF COUNSEL

I, Todd S. Dion, Esq., hereby certify that the foregoing document was filed with this Court on November 30, 2022 through the Court's ECF System and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 30, 2022.

*/s/ Todd S. Dion*
_____
Todd S. Dion, Esq.